UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————

№ 05-CV-3538 (JFB)

———————

YVONNE LITTLE,

Plaintiff,

VERSUS

JO ANN B. BARNHART, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,

Defendant.

———————

MEMORANDUM AND ORDER
September 29, 2006

———————

JOSEPH F. BIANCO, District Judge:

Plaintiff *pro se* Yvonne Little brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of defendant Commissioner of the Social Security Administration (the "Commissioner" and the "SSA," respectively) that Little was not entitled to Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Defendant moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). For the reasons that follow, the defendant's motion is granted.

I. BACKGROUND AND PROCEDURAL HISTORY

A. Prior Proceedings

Plaintiff applied for SSI on February 28, 2002, when she was forty-six years old. (Tr. at 47-50, 84.)[1] The application was initially denied on May 17, 2002. (Tr. at 28-32.) Plaintiff requested a hearing, which was held on March 1, 2004, and continued on October 22, 2004. (Tr. at 33-35, 362-442.) Plaintiff was represented at both sessions of the hearing by a representative from the New York City Disability Unit. (*Id.* at 362-442.) A vocational expert, Andrew Pasternak,

———

[1] References to "Tr." are to the administrative record in this case.

appeared and testified at the October 22, 2004 session of the hearing. (*Id*. at 362-405.)

On March 17, 2005, Administrative Law Judge Marilyn Hoppenfeld ("ALJ") issued a decision finding that plaintiff was not under a disability. (*Id*. at 12-23.)

Plaintiff requested Appeals Council review of the ALJ's decision. (*Id*. at 4-5.) On June 3, 2005, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied review.

B. Non-Medical Evidence

At the hearing, plaintiff reported that she cooked her own meals and cleaned her apartment daily. (*Id*. at 74-76.) Plaintiff also reported that she "work[ed] her body." (*Id*. at 74.) She did her laundry at a laundromat across the street from her home,[2] read, cleaned her apartment herself, and watched television. (*Id*. at 73-74, 76.) Plaintiff took public transportation and went to the store, doctor's visits, and family parties. (*Id*. at 76.) She estimated that she could walk for two blocks before needing to rest. (*Id*. at 79.) Plaintiff also reported that she had no problems paying attention, could follow both written and oral instructions, and could finish what she started. (*Id*.) Plaintiff reported that she had pain in her back radiating to her legs and feet, but that she was taking medication, Naprosyn, which relieved the pain. (*Id*. at 81-82.)

At the March 1, 2004 hearing, plaintiff testified that in the past she had worked as a computer operator for Citibank for approximately two years, ending in 1986. (*Id*.

---

[2] At the March 1, 2004 hearing, however, plaintiff testified that her sister had just gotten her a washing machine from the church and that she does her own laundry. (Tr. at 383.)

at 414-15.) Plaintiff then worked as a temp in other banks doing the same data entry work. (*Id*. at 415-16.) Plaintiff had also worked in a cafeteria in Washington between 1990 and 1992. (*Id*. at 416-17.) In addition, plaintiff reported that she had worked at 7-11 and KFC as a cashier/clerk in 1992. (*Id*. at 66, 392.) Most recently, in 2003, plaintiff worked for the state welfare agency where she assisted in verifying addresses. (*Id*. at 418-19.)

Plaintiff testified that in 2000, she was diagnosed with HIV when she underwent pre-operative tests prior to surgery to remove uterine fibroid tumors. (*Id*. at 420.) After her diagnosis, plaintiff stopped going to the doctor, except to get her medication. (*Id*. at 421.) Plaintiff also testified that she was not treated for her HIV because doctors instructed her that she was not ready for treatment, but that she should be monitored. (*Id*. at 421.)

Plaintiff was taking Naprosyn for back pain. (*Id*. at 82, 426-27.) Plaintiff testified that she had never been treated for depression nor had she had psychiatric counseling or HIV counseling. (*Id*. at 432.) Plaintiff stated that she did not want to go to the doctor except for the pain in her back. (*Id*.) She also testified that, in 1993, she had been hospitalized for high blood pressure. (*Id*. at 434.)

Plaintiff claimed that she could walk about one block, could stand for about thirty minutes, and could bend and kneel, but that those movements caused pain. (*Id*. at 435.) Plaintiff had her groceries delivered. (*Id*. at 438.)

Plaintiff testified that she was disabled because of the pain in her back which radiates into her fingers. (*Id*. at 439.) She also claimed that she had attended physical therapy for one year at New York Hospital for her back sometime around 1993. (*Id*. at 379.)

Plaintiff also moved from the sixth floor of her apartment to the second floor to make climbing the stairs easier when the elevator was not working. (*Id*. at 384.) She testified that she was scheduled to have her heart tested and was taking Diltiazem for hypertension. (*Id*. at 386-87, 424.) The Diltiazem and Naprosyn make her drowsy. (*Id*. at 387.) Plaintiff was also taking Asthmacort for her asthma two to three times a day and used inhalers. (*Id*. at 386-88, 427.) Plaintiff testified that she had problems with her breathing every day. (*Id*. at 390.)

### C. The Medical Evidence

Plaintiff was treated at Wyckoff Heights Medical Center, Queens Bridge Clinic, by Tun Lin, M.D., from June 1996 to November 10, 2004 for hypertension, anemia, uterine fibroids and spinal disease. (*Id*. at 182-253.) On June 14, 1996, plaintiff had normal x-ray results of her lumbrosacral, thoracic and cervical spine. (*Id*. at 178-80.) A January 7, 1999 MRI of plaintiff's lumbar spine showed small intraforaminal disc herniation on the left side at L4-L5 and enlargement of the uterus. (*Id*. at 164.) On March 10 and November 3, 1999, plaintiff was seen at Wyckoff for low back pain and prescribed a non-strereoidal anti-inflammatory drug ("NSAID"). (*Id*. at 200, 205.) A December 3, 1999 stress test impression was normal. (*Id*. at 163.)

Plaintiff was seen at Wyckoff Heights Medical Center multiple times during 2000. (*Id*. at 208-21, 280-83, 285-90.) She was diagnosed with HIV, degenerative spine disease, fibroids with menorrhea, and anemia during that time, and was treated with medication including Naprosyn and Celebrex. (*Id*. at 209, 211, 213, 215, 221, 280, 289.)

Plaintiff had a pelvic ultrasound on August 24, 2000, which showed uterine masses consistent with fibroids, an endocervical cyst, and a thickened endometrium. (*Id*. at 166.) On July 12 and November 24, 2000, x-rays of plaintiff's chest were normal. (*Id*. at 165, 169.)

On May 17, 2001, plaintiff was seen by Martha Valdivia, M.D. (*Id*. at 87-89.) Plaintiff reported a history of hypertension which was controlled with medication, and HIV, which had been diagnosed in November 2000. (*Id*. at 87.) The HIV was asymptomatic except for generalized fatigue. (*Id*.) Plaintiff also reported a history of low back pain exacerbated by lifting, bending, and walking. (*Id*..) Plaintiff lived alone in a second story apartment. (*Id*. at 87-88.) She told Dr. Valdivia that she had stopped working due to her low back pain. (*Id*. at 88.) Plaintiff also admitted to smoking one pack of cigarettes per day for the previous five years. (*Id*.)

Examination revealed normal affect and behavior. (*Id*.) Plaintiff had a non-tender eight centimeter cystic mass in the posterior neck. (*Id*.) She had a normal chest and lung exam, but had a systolic murmur. (*Id*.) Plaintiff had large hard masses consistent with fibroids. (*Id*.) She was able to walk without help and had a normal station and gait. (*Id*.) Her lumbrosacral spine had decreased range of motion, with no spasm, deformity, or tenderness. (*Id*.) Straight leg raising was ten degrees bilaterally. (*Id*.) Plaintiff was able to heel, toe, and tandem walk. (*Id*.) She could not squat. (*Id*.) Neurological examination was normal. (*Id*.) EKG was normal. (*Id*. at 89.) Her CD4 count was 1174. (*Id*. at 88.) Dr. Valdivia diagnosed HIV, which was stable; fibroids with marked functional impairment, pending surgery; anemia, with marked functional impairment; low back pain, stable, with moderate functional impairment; cystic mass of the posterior neck with

3

moderate functional impairment; hypertension increased secondary to non-compliance; and heart murmur possibly secondary to anemia. (*Id*. at 89.) The doctor noted that plaintiff could independently pay bills, do laundry, vacuum, shop, clean and cook. (*Id*. at 93.) She could also eat, bathe, dress, and groom herself without assistance. (*Id*. at 93.) Dr. Valdivia opined that plaintiff was able to sit, stand, and handle objects. (*Id*. at 89.) Plaintiff was markedly impaired in activities requiring walking, lifting, carrying and traveling, secondary to anemia and hypertension. (*Id*.) Plaintiff was given a referral for her heart murmur, was to have fibroid surgery and treatment of hypertension. (*Id*.)

A pelvic ultrasound performed on July 11, 2001, showed a fibroid uterus. (*Id*. at 110.) On September 27, 2001, plaintiff had an echocardiography which was normal except for evidence of left ventrical hypertrophy and mild aortic regurgitation. (*Id*. at 105.)

On September 10 and September 17, 2001, plaintiff was seen at the Mount Sinai Hospital of Queens for fibroids. (*Id*. at 108-09.) In September 2001 and December 2001, the only work limitations placed on plaintiff by doctors at the Mount Sinai Hospital of Queens were to avoid extreme temperatures and outside work. (*Id*. at 97-99.) Dr. J. Alan Reid stated that plaintiff was able to do general clerical work. (*Id*. at 97-98.)

Robin Bryant, Ph.D. administered Bender Gestalt and WAIS-III tests to plaintiff on April 16, 2002. (*Id*. at 111-114.) Plaintiff had full scale IQ of 72, placing her in the borderline range. (*Id*. at 113.) Plaintiff's Bender-Gestalt test revealed errors consistent with minimal brain dysfunction. (*Id*. at 114.) Plaintiff was diagnosed with depressive disorder not otherwise specified, with anxious features, minimal brain dysfunction, expressive and receptive speech and language delay, and borderline intellectual functioning. (*Id*.) Dr. Bryant opined that plaintiff would be able to handle some age-appropriate tasks in a supportive work setting and could benefit emotionally from working. (*Id*.) Plaintiff was in need of psychiatric treatment in order to reach her highest potential. (*Id*.)

Plaintiff was examined by Antonio De Leon, M.D. on April 16, 2002. (*Id*. at 115-117.) Plaintiff's report of her history included asthma for the past ten years with no hospitalizations or emergency room visits, no wheezing at night, but a cough with shortness of breath. (*Id*. at 115.) Plaintiff did not own a nebulizer and had not been intubated or treated with Prednisone. (*Id*.) Plaintiff used Proventil and a Serevent inhaler. (*Id*.)

Examination revealed a soft tissue mass over the nape of the neck. (*Id*.) A lung examination showed no wheezing or prolongation of the expiratory phase. (*Id*.) Plaintiff had a heart murmur and a pelvic mass. (*Id*. at 116.) Plaintiff had a full range of motion in her spine and joints without any deformities, swelling or tenderness. (*Id*.) She could flex and extend her back to sixty degrees, straight leg raising was to sixty degrees, and the remainder of her exam was normal. (*Id*.) Diagnostic testing showed a negative lumbar spine x-ray, a pulmonary function test within normal limits, and anemia. (*Id*. at 116, 118-22.) Plaintiff was diagnosed with hypertension which was controlled with medication, history of asthma, back pain, atypical chest pains, and a history of fibroids with heavy bleeding and anemia. (*Id*. at 116.) Dr. De Leon put no limitations on plaintiff's ability to sit. (*Id*.) She was mildly limited in her ability to walk, stand, lift, and carry because of chest pains, asthma and back pains. (*Id*. at 116-17.)

4

Plaintiff was also examined by pyschiatrist Joshua Algaze, M.D. on April 16, 2002. (*Id*. at 123-24.) Plaintiff complained of feeling anxious about her HIV diagnosis and experiencing occasional attention and concentration deficits. (*Id*. at 123.) Plaintiff also complained of weakness, fatigue, back pain, and asthma. (*Id*.) Plaintiff reported using marijuana until 1992. (*Id*.) She had normal psychomotor activity and good eye contact. (*Id*.) She was withdrawn. (*Id*.) Her speech was clear, well articulated and her thinking was concrete but logical. (*Id*.). She reported no obsessions or phobias. (*Id*.) Plaintiff denied any hallucinations or suicidal or homicidal ideations. (*Id*. at 124.) Her mood was anxious and depressed and her affect was blunted. (*Id*.) Plaintiff was alert and oriented with remote and recent memory intact. (*Id*.) Plaintiff's fund of information and intelligence level were average. (*Id*.) Her insight and judgment were fair. (*Id*.) Plaintiff was diagnosed with dysthymia, polysubstance abuse remission, personality disorder not otherwise specified and HIV. (*Id*.) Dr. Algaze opined that plaintiff had moderate difficulties in personal, social and occupational adjustment that impaired her ability to tolerate work pressures. (*Id*.) She had a satisfactory ability to understand, carry out and remember simple instructions, and a satisfactory ability to respond appropriately to supervision, co-workers and work pressures in a work setting. (*Id*.)

A state agency disability analyst reviewed plaintiff's file on May 2, 2002 and opined that plaintiff could occasionally lift ten pounds and could frequently lift less than ten pounds, could stand and/or walk for at least two hours in an eight hour day and could sit for about six hours in an eight hour day. (*Id*. at 126.) The analyst found that plaintiff had no limitations in her ability to push and pull and that she could occasionally climb, balance, stoop, kneel, crouch, and crawl. (*Id*. at 127.) In addition, the analyst found that plaintiff had no manipulative, visual, or communicative limitations, and that plaintiff had no environmental limitations with respect to wetness, humidity, noise and vibration. (*Id*. at 128-129.) The analyst did find that plaintiff should avoid concentrated exposure to extreme heat or cold, fumes, odors, dusts, gases, poor ventilation, etc., and hazards. (*Id*. at 129.)

On May 10, 2002, Kusum Walia, Ph.D., a state agency psychologist, completed a mental residual functional capacity assessment and psychiatric review technique. (*Id*. at 132-148.) Dr. Walia found that plaintiff had mild limitations in restrictions of daily activities, maintaining social functioning and maintaining concentration, persistence or pace. (*Id*. at 145.) Plaintiff was not significantly limited in most areas, and only had moderate limitations in her ability to understand and remember detailed instructions, carry out detailed instructions and her ability to set realistic goals or make plans independently of others. (*Id*. at 132-33.)

In June 2002, plaintiff's CD4 count was 1326. (*Id*. at 225.) Plaintiff was seen again at Wyckoff Heights Medical Center in November 2002 for bronchitis. (*Id*. at 206.) A January 21, 2003 chest x-ray showed no active heart disease and mild cardiomegaly. (*Id*. at 162.) On September 4, 2003, plaintiff was given a prescription for, among other things, Diltiazem and Prevacid. (*Id*. at 228.)

On November 11, 2004, Tun Lin, M.D., plaintiff's treating doctor at Wyckoff Heights Medical Center, opined that plaintiff had been diagnosed with hypertension, anemia, uterine fibroids and spinal disc disease. (*Id*. at 341.) Plaintiff had to lie down during the day because of her back pain. (*Id*. at 341-A.) She

5

received Naprosyn and Tiagree, Folic and Fesoy. (*Id*. at 341-A, 357.) Dr. Lin stated that plaintiff's herniated disks could cause pain. (*Id*. at 341-A.) Plaintiff could sit for up to two hours continuously and for a total of six hours in an eight hour word day. (*Id*. at 342.) Dr. Lin opined that plaintiff had the same restrictions when standing or when walking. (*Id*.) Plaintiff could frequently lift eleven to twenty pounds and occasionally lift twenty-one to twenty-five pounds. (*Id*.) She could frequently carry up to ten pounds and occasionally carry eleven to twenty pounds. (*Id*.) Plaintiff could occasionally bend, squat, climb, and reach. (*Id*.) Plaintiff could use her hands, legs, and feet, for repetitive motions. (*Id*. at 343.) Dr. Lin opined that plaintiff was totally restricted from being exposed to unprotected heights, moving machinery, marked changes in temperature and humidity and dust, fumes, and gases. (*Id*. at 343, 361.) She was moderately restricted from exposure to driving a motor vehicle and stress. (*Id*. at 343.) Plaintiff could travel on public transportation every day. (*Id*. at 344.)

In a separate statement of ability to do work related activities completed the same day, Dr. Lin opined that plaintiff could lift or carry twenty pounds occasionally and less than ten pounds frequently. (*Id*. at 358.) Plaintiff could stand or walk for at least two hours in an eight hour day and could sit for less than six hours in an eight hour day. (*Id*. at 358-39.) Her ability to push and pull was limited in her arms and legs. (*Id*. at 359.) Plaintiff could never climb and could occasionally perform other postural activities such as balancing, kneeling, crouching, crawling and stooping. (*Id*.) Plaintiff's manipulative, visual and communicative functions were unlimited. (*Id*. at 361.)

E. Procedural History

Plaintiff filed a complaint in this case on July 20, 2005, and the case was assigned to the Honorable Edward R. Korman. On February 8, 2006, this case was reassigned to this Court. On March 29, 2006, defendant moved for judgment on the pleadings. On June 8, 2006, *pro se* plaintiff submitted an opposition.

II. DISCUSSION

A. Applicable Law

1. Standard of Review

A district court may only set aside a determination by an ALJ which is based upon legal error or not supported by substantial evidence. *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998) (citing *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982)). The Supreme Court has defined "substantial evidence" in Social Security cases as "more than a mere scintilla" and that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Quiones v. Chater*, 117 F.3d 29, 33 (2d Cir. 1997) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion") (internal quotations and citations omitted). Furthermore, "it is up to the agency, not th[e] court, to weigh the conflicting evidence in the record." *Clark v. Comm'r of Social Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). If the court finds that there is substantial evidence to support the Commissioner's determination, the decision must be upheld, even if there is substantial evidence for the plaintiff's position. *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998); *Jones v. Sullivan*, 949 F.2d 57,

59 (2d Cir. 1991). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey*, 145 F.3d at 111; *see also Jones*, 949 F.2d at 59 (quoting *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984)).

2. The Disability Determination

A claimant is entitled to disability benefits under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). An individual's physical or mental impairment is not disabling under the Act unless it is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated regulations establishing a five-step procedure for evaluating disability claims. *See* 20 C.F.R §§ 404.1520, 416.920. The Second Circuit has summarized this procedure as follows:

> The first step of this process requires the [Commissioner] to determine whether the claimant is presently employed. If the claimant is not employed, the [Commissioner] then determines whether the claimant has a "severe impairment" that limits her capacity to work. If the claimant has such an impairment, the [Commissioner] next considers whether the claimant has an impairment that is listed in Appendix 1 of the regulations. When the claimant has such an impairment, the [Commissioner] will find the claimant disabled. However, if the claimant does not have a listed impairment, the [Commissioner] must determine, under the fourth step, whether the claimant possesses the residual functional capacity to perform her past relevant work. Finally, if the claimant is unable to perform her past relevant work, the [Commissioner] determines whether the claimant is capable of performing any other work.

*Brown*, 174 F.3d at 62 (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). The claimant bears the burden of proof with regard to the first four steps; the Commissioner bears the burden of proving the last step. *Brown*, 174 F.3d at 62.

The Commissioner "must consider" the following in determining a claimant's entitlement to benefits: "(1) objective medical facts and clinical findings; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability; and (4) claimant's educational background, age, and work experience." *Id.* (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam)).

B. Application

The ALJ found that plaintiff had not engaged in substantial gainful activity since her application date of February 28, 2002. (Tr. at 13.) The ALJ found, at the second and third step of the sequential analysis, that plaintiff had severe impairments of hypertension, fibroids, mild cardiomegaly,

7

small herniated discs at L4-L5 with no neurological defects reported, and HIV, but that these severe impairments did not meet or equal any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 13-14.) At the fourth step, the ALJ found that plaintiff could perform a wide range of light work, limited to repetitive, simple jobs, which were low stress and had no exposure to gases or fumes. (*Id.* at 21.) Pursuant to 20 C.F.R. § 416.967(b),

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

At step five, the ALJ determined that, based upon plaintiff's residual functional capacity and the vocational expert's testimony, plaintiff could perform her past relevant work as a data-entry clerk, which is classified as sedentary work. (*Id.* at 21.). Pursuant to 20 C.F.R. § 416.967(a),

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.

Although unnecessary in light of the ALJ's finding that plaintiff could return to her past relevant work, the ALJ also applied the Medical-Vocational Guidelines at step five of the sequential analysis. The vocational expert testified that plaintiff's former work in data-entry was semi-skilled work requiring a sedentary level of exertion. (*Id.* at 394.) Based on all of the evidence in the record and the hearing testimony, the ALJ concluded that plaintiff was not disabled. (*Id.* at 21.)

In opposing defendant's motion, plaintiff states that she is too sick to get a job. She also repeats the various medications that she has been prescribed. In addition, plaintiff attaches a form letter from Wyckoff Heights Medical Center, dated October 28, 2005, instructing her to return to the OB/GYN clinic as soon as possible. She also attaches a lab report dated August 31, 2005, stating that plaintiff had abnormal lab results. Plaintiff also attaches a persantine nulcear stress test report dated February 22, 2006 from Cardiology Services, P.C., that concludes plaintiff has positive nuclear perfusion study for cardiac ischmia of apex and anterior wall and no angina or arryhthmia during the stress test. Finally, plaintiff attaches an August 15, 2005 physician's wellness rehabilitation plan report from Tun Lin, M.D., stating that plaintiff is temporarily unemployable.

Based on a review of the transcript, the Court finds that the ALJ fulfilled her duty to fully and fairly develop the record. Further, having carefully reviewed the record, the Court concludes that substantial evidence supports the ALJ's finding that the plaintiff was not entitled to disability benefits for the period up to March 17, 2005. The medical evidence in the record, described above, demonstrates that plaintiff was capable of light work and certainly sedentary work. Plaintiff's past work was sedentary in nature. Plaintiff, therefore, failed to establish that she is unable to return to her past work due to her impairments.

In addition to considering the opinions of plaintiff's treating physicians and the state agency disability analyst's opinion, the ALJ considered plaintiff's testimony regarding her back pain, problems with breathing, and other limitations, and properly concluded that her allegations were not supported by the objective medical evidence.

As discussed above, the ALJ concluded that, although plaintiff had testified that she had back pain that was disabling her, plaintiff reported that Naprosyn, an anti-inflammatory drug, relieved her back pain. (*Tr.* at 19, 82.) The ALJ also noted that plaintiff was not recommended for any medication stronger than the Naprosyn and that the results of the exam by Dr. De Leon in April 2002 indicated that plaintiff had a full range of motion in her spine and joints without deformity, that she had no atrophy, spasm, subluxation, contractures, alkalosis, or instability, and that she did not have difficulty transferring from seated position or getting on or off the examination table. (*Id.* at 19-20, 116.) The ALJ therefore found that her claims of back pain, that was disabling her, not credible in light of the objective medical evidence. (*Id.* at 19-20.) The ALJ also found plaintiff's allegations regarding her heart condition not credible given that the results of her December 3, 1999 stress test were normal and plaintiff had no further heart testing since that time. (*Id.* at 20.) The ALJ found that any allegations of a mental disorder were not credible because plaintiff had never had any psychiatric treatment or been prescribed psychiatric medication. (*Id.*) Finally, plaintiff testified to breathing problems due to asthma. (Tr. at 390.) However, x-rays of plaintiff's chest taken in July and November of 2000 and January 2002 were normal showing no active disease and mild cardiomegaly. (Tr. at 162, 165, 169.) Furthermore, plaintiff's report of asthma over the past ten years included no hospitalizations or emergency room visits, and plaintiff did not own a nebulizer and plaintiff had not been intubated or treated with Prednisone. (*Id.* at 115, 386-387.) Furthermore, plaintiff is able to maintain her own apartment, take public transportation, do her own laundry and food shopping, prepare food, pay her bills and handle her savings account. (*Id.* at 73-77.)

The ALJ has an absolute duty and obligation to consider not only the plaintiff's testimony, but the record as a whole. *See Yancey*, 145 F.3d at 111; *Jones*, 949 F.2d att 59; *Kendall v. Apfel*, 15 F. Supp. 2d 262, 267 (E.D.N.Y. 1998); *Rosado v. Shalala*, 868 F. Supp. 471, 473 (E.D.N.Y. 1994). Indeed, "[i]t is the function of the Secretary, not the reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Aponte v. Secretary, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (internal citations and quotations omitted).

Plaintiff attaches additional documents to her opposition to defendant's motion. "In seeking review of an ALJ's decision, a claimant is afforded the right to submit new and material evidence that relates to the period *on or before* the ALJ's decision." *Gamble v. Barnhart*, No. 02-CV-1126 (GBD), 2004 U.S. Dist. LEXIS 24004, at *9, 100 Soc. Sec. Rep. Service 763 (S.D.N.Y. Nov. 24, 2004) (citing *Perez v. Chater*, 77 F.3d 41, 44-45 (2d Cir. 1996)) (emphasis added); *see also Firpo v. Shalala*, No. 94-CV-3368 (JSM), 1995 U.S. Dist. LEXIS 2524, at *9 (S.D.N.Y. Feb. 24, 1995) ("This Court's reviewing authority is limited by the timeframe of plaintiff's application, delineated by the alleged onset of plaintiff's disability and the Secretary's decision regarding the plaintiff's eligibility as a result of that disability.").

To the extent plaintiff raises a disability claim based on the August 15, 2005 report by Dr. Lin, noting that plaintiff is temporarily

unemployable, or the August 31, 2005 lab report with the October 26, 2005 appointment recall letter, or the February 22, 2006 stress test report, "[t]he appropriate course is to file a new claim. Denial of remand in itself will not prejudice a new claim." *Sailing v. Secretary of HHS*, No. 90-5156, 1990 U.S. App. LEXIS 19782 (6th Cir. Nov. 6, 1990) (internal citation omitted); *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985) ("The subsequent deterioration . . . may form the basis for a new claim."); *Nevils v. Barnhart*, No. 05-2012 (WL), 2005 U.S. Dist. LEXIS 33771, at *9 (D. Kan. Dec. 16, 2005) ("[T]he general rule that if a claimant submits new evidence based on testing done after an ALJ's decision is issued, the claimant must file a new claim rather than ask the court to engage in the impossible task of guessing whether the new evidence undermines the ALJ's original decision."). Accordingly, this Court cannot consider the medical examinations submitted by plaintiff that took place after the ALJ's determination. Instead, the appropriate course of action is for plaintiff to file a new claim, to the extent she is entitled to under the law, relating to the period after the ALJ's determination.

Therefore, the ALJ's conclusion that plaintiff was not disabled within the meaning of the Act, during the relevant time frame, and that plaintiff could perform a wide range of sedentary work was aptly supported by the record. *Yancey*, 145 F.3d at 111; *Jones*, 949 F.2d at 59; *Valente*, 733 F.2d at 1041.

III. CONCLUSION

For the reasons stated above, the defendant's motion for judgment on the pleadings is GRANTED. The Clerk of the Court is directed to enter judgment in favor of defendant and against plaintiff, and to close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: September 29, 2006
Central Islip, NY

\* \* \*

Plaintiff appeared *pro se*. The attorney for the defendant is Kelly Horan, Esq., Special Assistant United States Attorney, Roslynn R. Mauskopf, Esq., United States Attorney, Eastern District of New York, One Pierrepont Plaza, 14th Floor, Brooklyn, New York 11201.